UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNA M. CAIN,

       Plaintiff,

v.                                                              Case No. 1:16-cv-1071
                                                               Hon. Ray Kent
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
                                        /

**OPINION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

       Plaintiff alleged a disability onset date of July 10, 2013. PageID.176. Plaintiff identified her disabling conditions as Lupus, restless leg problem, and high cholesterol. PageID.180. Plaintiff, a high school graduate, had previous employment as a cashier. PageID.181. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 13, 2015. PageID.46-54. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

       This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than

a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one

2

which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of

April 1, 2014. PageID.48. At the second step, the ALJ found that plaintiff had severe impairments of: plantar fasciitis; bilateral carpal tunnel syndrome (CTS) status-post release surgeries; obesity; and lupus. PageID.48. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

The ALJ decided at the fourth step that:

> Claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except she can only stand/walk for 2 hours and sit for 6 hours of an 8-hour workday with normal breaks; and frequently handle and finger bilaterally.

PageID.49. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.52.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.52-53. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations such as: assembler (223,000 jobs in the national economy); inspector/packager (114,000 jobs); and information clerk (56,000 jobs). PageID.53. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since April 1, 2014, the date the application for SSI was filed. PageID.53-54.

### III. DISCUSSION

Plaintiff set forth two related issues on appeal:

**A.  The ALJ failed to create an accurate residual functional capacity (RFC) assessment and therefore erroneously found work at Step Five.**

### B. The ALJ made an erroneous credibility determination.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In evaluating a claimant's RFC, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Commissioner of Social Security*, 30 Fed.Appx. 542, at 547-548 (6th Cir. 2002) (citations and quotation marks omitted).

Plaintiff contends that the ALJ's RFC is not supported by substantial evidence because it failed to address three areas in which she is restricted. First, the RFC did not account for the flare-ups and symptoms caused by her lupus, "[s]pecifically, [the ALJ] ignores the ramifications of the Plaintiff's fatigue, headaches, memory issues, abdominal pain, and joint pain on her ability to work." Plaintiff's Brief (ECF No. 13, PageID.823). These flare-ups cause absenteeism which result in termination. Second, the RFC inaccurately concluded that plaintiff could "frequently" handle and finger objects. *Id*. Plaintiff cannot perform this work-related activity due to her CTS, arthritis in her hands, and lupus. *Id*. Third, the RFC did not address postural maneuvers, such as bending, stooping, crouching or crawling. *Id*. at PageID.824.

Plaintiff's RFC is based largely upon the ALJ's determination that plaintiff was not credible with respect to her alleged restrictions from these conditions. An ALJ may discount a

claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Although credibility is the key to plaintiff's claim, she does not address the ALJ's credibility determination with any specificity:

> In this case, the ALJ's entire credibility determination is based upon the ALJ's conclusion that the Plaintiff's subjective complaints are "exaggerated" and not supported by evidence. As thus, he forces the subsequent reviewer to hunt through the decision looking for his rationale. (PageID.22). As a result, the ALJ's analysis is not supported by substantial evidence, made without an actual discussion of Plaintiff's testimony and lacks compliance with Social Security's own rulings and regulations; accordingly, remand is required to properly analyze the Plaintiff's credibility.

6

Plaintiff's Brief at PageID.825-826. The Court agrees that the ALJ's credibility determination is dispersed throughout the opinion. However, plaintiff's bald assertion of error, without reference to the record or reviewing how the ALJ actually addressed her claims, is without merit.

The ALJ summarized plaintiff's claims as follows:

> Claimant alleges she is unable to work primarily due to persistent aching in her joints that limits claimant's ability to handle, finger, lift, sit, stand, and walk (testimony). After careful consideration of the evidence, I find the degree of limitation alleged by claimant is not credible.
>
> Turning to the evidence . . . She graduated from high school. Claimant worked as a Cashier sporadically. She had two children. Claimant went for years without working. She was married to a military man. Claimant raised children (1D and 2E).
>
> While working as a Cashier at Cabela's in April 2013, the 33-year-old claimant was treated for lupus. She complained about bumps on her forehead that had not resolved with acne cream. Claimant had a biopsy and lab work in June 2013 (9F:4). Claimant's ANA test was negative (9F:12). She received a Kenalog injection. Claimant was prescribed ointment. She was advised to wear sunscreen at all times while outdoors (14F).
>
> Despite the fact that claimant was not having severe lupus symptoms, claimant allegedly quit her Cashier job primarily due to lupus on July 10, 2013, the alleged onset date. It appeared she quit the job because claimant indicated that she had never been fired (2E and 3E).
>
> After she stopped working, claimant received benign treatment for ovarian cyst, hemorrhoids, her gallbladder, and non-steroidal lupus (5F:7, 8F:l07, 12F:154-9, 12F:167-175, and 12F:198-211). Claimant had three children at home and described herself as a homemaker in October 2013 (5F:47) (testimony and 6D). She told her rheumatologist that she was working part-time in December 2013 (5F:8 and 11). Despite her normal lupus tests (5F:36), benign treatment, and stated ability to manage a household, and work part time, claimant applied for Title XVI benefits on April 1, 2014 (1D). At the time, it appeared claimant quit her Cashier job at Shell as she was planning to have carpal tunnel release surgery (6F).

PageID.50.

The ALJ summarized plaintiff's credibility as follows:

7

Turning to claimant's credibility, a few months after she applied [for SSI], despite her allegedly disabling conditions, including photosensitivity, claimant admitted she was out in her yard, during the peak of summer, in August 2014, mowing the lawn with a riding mower (12F:45).

*Id*.

The ALJ reviewed plaintiff's claims regarding her feet, hands, obesity, and lupus. Contrary to plaintiff's claims, the ALJ addressed the three areas of concern during that process stating in pertinent part as follows:

**Plaintiff's postural limitations related to her feet**

In terms of claimant's feet, claimant alleged that she could walk no further than 40 feet. She said she could not stand for long periods of time in April 2014. But the medical evidence does not support this degree of limitation. The evidence shows claimant had high arches and heel spurs. But aside from her pain complaints, claimant could shop for hours without an assistive device. She could operate the foot controls on a riding mower. To address her subjective pain complaints, claimant underwent a simple uncomplicated elective gastroc recession surgery designed to lengthen her calf muscle and Achille's tendon on her left foot in June 2015 (12F:45 and 13F:16). At the hearing, claimant said that she was still recovering from the surgery. There was no evidence this surgery was not expected to improve claimant's mobility. This evidence supports finding claimant can stand/walk for at least two hours during an eight-hour workday with normal breaks.

PageID.50.

**Plaintiff's ability to frequently handle and finger objects**

In terms of claimant's hands, claimant alleged she could lift no more than 10 pounds (testimony). But the medical and other evidence does not support this degree of limitation. Claimant had bilateral carpal tunnel release surgeries in 2014. Afterwards, she could use her hands to climb up on, start, and forcefully steer a riding lawnmower (i.e. she popped her shoulder while holding the steering wheel) (12F:45). Claimant told her rheumatologist that she had no difficulty using her hands to button her clothing and tie shoelaces (Apr 2015, 7F:8). Claimant could support her own weight on crutches after having surgery on her left foot in June 2015 (13F). This evidence supports finding claimant can use her hands to lift light loads. She can frequently, as opposed to constantly, handle and finger.

8

PageID.50.

### Plaintiff's postural limitations (related to obesity)

In terms of claimant's weight, claimant was 5 '4" tall and weighed 268 pounds (testimony). Her foot doctor and physician's assistant advised claimant to lose weight and exercise (8F:22 and 13F:11). I[t] appeared claimant's obesity created some degree of limitation by contributing to her foot problems. But it appeared claimant could climb up on a lawnmower and ride it around her yard when motivated. She could work "on her feet" at a gas station for a few days while working part time (testimony and 12F:45). For these reasons, I limited claimant to light level work where she would only be standing/walking for two hours of the day with normal breaks.

PageID.50.

### Flare-ups and symptoms caused by lupus

In terms of her lupus, claimant was allegedly diagnosed with this condition by a dermatologist who was treating claimant for skin rashes and sores in her mouth. Claimant complained of joint pain and fatigue. She also described having light sensitivity (3E and 14F). Claimant engaged in rheumatological care. She was given injections, prescribed medications, prescribed ointments, and advised to wear sunscreen at all times while outdoors. With care, claimant's lupus flares occurred infrequently and responded well to non-steroidal medication (5F:59). Claimant was not too tired, sore, or sensitive to sunlight to go outside and mow her lawn (3E, 12F:45, and 14F). In April 2015, upon examination by a rheumatologist, claimant had no nasal or oral ulcers. Claimant's ENA and ANA levels were normal. Claimant complained of memory loss and was referred for testing. But there were no neuropsychiatric tests in the evidence (7F). This evidence supports my assessment of claimant's physical capacity.

PageID.51.

After reviewing plaintiff's medical history, the ALJ addressed her credibility again:

Turning to claimant's credibility, claimant had very little work history indicating that her underemployment was perhaps a matter of personal choice, rather than her alleged inability to do the work (see 5D). Claimant testified that she has two teenaged children and does household chores while her husband attends school full time (testimony).

9

Next, in August 2014, during the time frame that she was allegedly disabled by hand pain, foot pain, and lupus, claimant was able to walk out onto her yard (presumable more than 40 feet because she has a riding mower). She was able to climb up, start, and operate the mower with her arms and legs. Claimant was no [sic] in too much joint pain or fatigued to ride her mower around her yard on uneven ground. In terms of her skin sensitivity, claimant was able to tolerate being outside long enough to mow her lawn (12F:45). In sum, the above residual functional capacity assessment is supported by the preponderance of the evidence.

PageID.52.

The ALJ's reference to Exhibit 5D (summary of plaintiff's FICA earnings for the years 1998 through 2014) is significant, because it reflects that plaintiff had a limited work history. Plaintiff had no earnings during nine of those years (1999, 2005-2011, and 2014) and earned less than $1,000.00 during two of the years she worked (1998 and 2012). PageID.163. While plaintiff earned more than $1,000.00 during six of the years she worked (2000-2004 and 2013), there is only one year (2013) in which she earned over $10,000.00. *Id*. Based on this earnings record, the ALJ could properly consider plaintiff's lack of employment and underemployment during the years prior to the alleged disability onset date as evidence of her lack of motivation to work or a lifestyle choice rather than the result of a disabling condition. A claimant's work history is one of the many factors that the ALJ can consider in making his credibility determination. *See* 20 C.F.R. § 416.929(c)(3); *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (noting that an additional factor supporting the claimant's credibility was that she had a 17 year work history); *Wilcoxson v. Commissioner of Social Security*, No. 1:14-cv-1007, 2016 WL 878036 at *4 (W.D. Mich. March 8, 2016) (the ALJ properly considered the plaintiff's work history, noting that plaintiff "had a steady and consistent work record for nearly 40 years, which indicates good work motivation"); *Beckett v. Colvin*, No. 4:13CV3057, 2014 WL 1369604 at *13 (D. Neb. April 7, 2014) (affirming decision where the ALJ found that "[the

claimant's] current underemployment was likely a lifestyle choice and not a situation imposed by her mental and physical impairments").

The ALJ addressed the three areas in which plaintiff claims she has work-preclusive limitations. There is no compelling reason to disturb the ALJ's credibility determination with respect to plaintiff's alleged limitations. *See Smith*, 307 F.3d at 379. Accordingly, plaintiff's claims of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: September 19, 2017            /s/ Ray Kent
                                     RAY KENT
                                     United States Magistrate Judge